**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIN MCEWEN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | File No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CAPTIVEAIRE SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Erin McEwen ("Plaintiff" or "Ms. McEwen") hereby files this Complaint against Defendant CaptiveAire Systems, Inc. ("Defendant" or "CaptiveAire") for Damages and Equitable Relief, stating as follows:

**INTRODUCTION**

1. Plaintiff asserts claims for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and discrimination and retaliation in violation of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*.

2. Plaintiff seeks back pay and lost economic benefits of her employment, compensatory damages, punitive damages, and her reasonable attorneys' fees and costs of litigation in an amount to be determined at trial.

## JURISDICTION AND VENUE

3.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. See 28 U.S.C. § 1391(b)(2); 42 U.S.C. § 12117; 42 U.S.C. § 2000e–5(f)(3).

## THE PARTIES

5.    Plaintiff is a resident of Georgia. She subjects herself to the jurisdiction of this Court.

6.    Plaintiff is a female and an individual with a disability as that term is defined under the ADAA.

7.    Specifically, Plaintiff is a person with a disability because she suffers from Stiff Person Syndrome ("SPS") which constitute a disability/disabilities under the ADAAA.

8.    Among other things, Plaintiff's diagnosed condition of SPS manifests itself in various ways, including impairing or preventing Plaintiff from walking, causing Plaintiff to experience debilitating muscle spasms, and causing Plaintiff to feel extreme pain.

2

9.     At all relevant times, Plaintiff was a "qualified individual" with a disability because she was able to perform the essential functions of her job with or without a reasonable accommodation.

10.    Plaintiff was at all relevant times a person with a disability because she has an actual impairment, SPS, which substantially limited one or more of her major life activities, because she had a record of impairment, and because she was regarded as having an impairment.

11.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of Title VII and the ADAAA.

12.    CaptiveAire is a corporation organized under the laws of the State of North Carolina and is subject to the jurisdiction of this Court because it conducts substantial business within this judicial district in Atlanta, GA. CaptiveAire may be served with process upon its registered agent, James Aring, located at 110 Londonderry Court, Woodstock, GA 30188.

13.     At all times relevant to this action, Defendant was an "employer" within the meaning of the Title VII and the ADAA.

## ADMINISTRATIVE PROCEEDINGS

14.    Plaintiff has satisfied all administrative prerequisites to perfect her claims of discrimination under Title VII and discrimination and retaliation under the ADAAA.

Specifically, she timely filed Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and disability discrimination and retaliation and timely filed this lawsuit following receipt of a Notice of Right to Sue Letter.

## STATEMENT OF FACTS

### Ms. McEwen's Background and Experience With Defendant

15. Ms. McEwen worked for Defendant for almost seventeen years and, at the time of Defendant's termination of her, held the title of Sales Engineer.

16. During her tenure she was a devoted and high performing employee.

17. Ms. McEwen never received a negative performance review nor was she ever subjected to any progressive disciplinary process.

18. Ms. McEwen took on numerous challenging projects and was entrusted with accounts others did not want to take on.

19. Ms. McEwen trained new employees in all aspects of a sales position from customer service to setting specifications.

20. Ms. McEwen also cross-trained employees from other departments within the company on sales, customer service, and client relations to provide a better understanding of how the sales teams could best interact and collaborate with

4

corporate R&D, Manufacturing, and IT to promote a comprehensive approach to fulfilling customers' needs, especially with respect to national accounts.

21.    Ms. McEwen worked diligently across several corporate locations, adapting to numerous roles and responsibilities with aplomb.

22.    From April 23, 2012 until her wrongful termination on June 28, 2024, Ms. McEwen worked as a remote employee, a role in which she excelled despite the challenges posed by the onset of her disability in 2019.

23.    Ms. McEwen has worked remotely for the following CaptiveAire offices: Denver, Houston, San Jose, Tampa, National Accounts, Kentucky, and Atlanta.

24.    During the entire period she worked remotely, Ms. McEwen fulfilled all her essential job functions.

25.    From September 2023 through June 28, 2024, the day on which she was abruptly and illegally terminated, Ms. McEwen worked remotely and exclusively for Defendant's Atlanta office.

### Plaintiff's Disability: Stiff Person Syndrome

26.    Ms. McEwen's  symptoms of SPS started in 2019.

27.    The first symptom was back pain; however, as is common with SPS, the symptoms did not immediately point to an auto-immune disorder.

28. In 2020, she began experiencing back spasms which became more severe after she moved to Florida and she had difficulty walking.

29. Ms. McEwen was in constant severe pain.

30. In October 2020, she was referred to a spine specialist who performed facet injections along the spine and a radiofrequency rhizotomy to kill a nerve suspected of causing excess pain.

31. On or about On Thursday, July 14, 2022, Ms. McEwen performed a site visit to Alpharetta, Georgia for a national account customer of Defendant through the Tampa office.

32. At this time, her SPS remained un-diagnosed.

33. She used a walking stick, and had extreme back pain and stiffness, both of which were being treated by physical therapy.

34. She parked in a handicapped space and called her client representative who escorted her to the front door and around the jobsite.

35. This was her final jobsite visit.

36. After Ms. McEwen told Molly Rice, who became Vice President of Kitchen Ventilation Sales and also served as her manager, about her difficulties at the job site, Ms. Rice instructed Ms. McEwen not to conduct any more jobsite visits due to liability and personal safety reasons.

37.   On August 3, 2022, Ms. McEwen was formally diagnosed with SPS.

38.   By then, she had seen fifteen medical professionals over the course of three years trying to piece together what was wrong.

39.   She remained a full-time CaptiveAire employee during this entire time and took no sick leave.

40.   In September 2022, Ms. McEwen notified Ms. Rice of her SPS diagnosis over the phone.

41.   Ms. Rice seemed uninterested and referred to Ms. McEwen's condition as "Stick Person Syndrome."

42.   In late 2022, during another phone conversation, Ms. McEwen and Ms. Rice discussed how Ms. McEwen's treatment was going. Ms. McEwen shared her treatment plan and stated to Ms. Rice that she was able to continue working while receiving medical care. Ms. McEwen explained she would be confined to a chair during her treatments.

43.   Ms. Rice visited Georgia and asked Ms. McEwen to meet her for dinner on or about August 14, 2023. Ms. McEwen used a walker while at dinner.

44.   Ms. Rice assumed a Vice President role and once again became Ms. McEwen's supervisor from September 2022 until Ms. McEwen's unlawful termination on June 28, 2024.

### Ms. McEwen's Work in the Atlanta Office and Defendant's Discriminatory Treatment of her

45. Ms. McEwen joined Defendant's Atlanta office part time after her work with Kentucky wrapped up.

46. CaptiveAire had just terminated its Atlanta regional manager and the office had three salespersons: Ms. McEwen, Wesley Henson, and Brian Rearley.

47. Henson and Rearley are male and, on information and belief, do not suffer from any disabilities.

48. Initially, Henson and Ms. McEwen each worked fifty percent (50%) of their time in Atlanta.

49. Ms. McEwen split her time between Atlanta and National Accounts then, at the direction of Ms. Rice, Ms. McEwen was brought on full-time for Atlanta beginning in September 2023.

50. Ms. Rice rejected Ms. McEwen's request to continue to work for National Accounts and told Ms. McEwen that her new role included training Rearley and supporting both Rearley and Henson as they spent time out of the office calling on customers and visiting jobsites.

51. When Ms. McEwen told Ms. Rice that Rearley and Henson refused to leave the office, Ms. Rice told her to keep doing what she was doing and try to nudge them along.

8

52. About ten days later, Ms. Rice sent Ms. McEwen an email asking her to start working from the Atlanta office one day per week.

53. When Ms. McEwen received Ms. Rice's email asking her to work from the Atlanta office one day per week, Ms. McEwen asked for accommodation under the ADA to remain a fully remote employee and offered a letter from her treating neurologist stating that this would be in Ms. McEwen's best interest.

54. Ms. Rice stated there would be no need to file the requested paperwork and that CaptiveAire was happy for Ms. McEwen to remain designated as a fully remote employee.

55. However, Ms. Rice also informed Ms. McEwen that she intended to assign her full time to Atlanta.

56. In retaliation for Ms. McEwen's disability and request for accommodation, Ms. Rice set Ms. McEwen up to fail at the Atlanta office.

57. Over the course of the next several months, Ms. McEwen mentioned numerous times that she was concerned about Atlanta's sales per employee.

58. Ms. Rice assured her that corporate views Atlanta as a $10 million per year revenue region that needed help getting back on track and stated her belief that Ms. McEwen was well suited for that role.

9

59. Ms. Rice told Ms. McEwen that her new role at Atlanta was to support Rearley and Henson as Rearley "learned the ropes" at CaptiveAire.

60. At the same time, Ms. Rice complained that Rearley was not following her explicit instructions regarding CaptiveAire Service "ride-alongs" and weekly customer visits.

61. CaptiveAire terminated Ms. McEwen on June 28, 2024 due to an alleged "layoff."

62. The true reason behind Ms. McEwen's termination is illegal disability and sex discrimination and retaliation.

63. HR Manager Emily Launer told Ms. McEwen that the reason for her layoff was that CaptiveAire needs "boots on the ground" in the Atlanta office to generate more sales.

64. Ms. McEwen asked whether any other CaptiveAire offices needed assistance or could use a remote employee.

65. Ms. Launer stated that all of the positions available need "boots on the ground" and they did not have work for a remote employee.

66. Ms. Launer told her that if she could relocate to another state, CaptiveAire might be able to find her a position with the company, but CaptiveAire would still require "boots on the ground."

67.    Ms. McEwen explained that she could not simply relocate because her entire medical team, which took years to assemble, is in Atlanta.

**COUNT ONE**
**DISCRIMINATION AND FAILURE TO ACCOMMODATE IN**
**VIOLATION OF THE ADAAA**
**– ACTUAL DISABILITY**

68.    Plaintiff incorporates by reference paragraphs 1 through 67 of this Complaint as if fully restated herein.

69.    Plaintiff is a qualified individual with a disability. Plaintiff's disability substantially limited one or more major life activities.

70.    Nonetheless, Plaintiff was able to perform the essential functions of her job.

71.    Plaintiff requested a reasonable accommodation from Defendant in the form of working from home.

72.    Defendant intentionally discriminated against Plaintiff by subjecting her to adverse employment actions including, but not limited to, denying her requested accommodations and unlawfully terminating her employment.

73.    Defendant's denial of accommodation and its termination of Plaintiff were intentional and willful violations of the ADAAA in violation of Plaintiff's rights thereunder.

74.    Plaintiff is entitled to an award of back pay, compensatory damages, punitive

damages, attorneys' fees and costs, and all other relief available under the ADAAA.

## COUNT TWO
## DISCRIMINATION IN VIOLATION OF THE ADAAA
## – REGARDED AS DISABLED

75.    Plaintiff incorporates by reference paragraphs 1 through 67 of this Complaint as if fully restated herein.

76.    Defendant terminated Plaintiff because it regarded her as being disabled.

77.    Defendant's termination of Plaintiff was an intentional and willful violation of the ADAAA in violation of Plaintiff's rights thereunder.

78.    Plaintiff is entitled to an award of back pay, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the ADAAA.

## COUNT THREE
## RETALIATION IN VIOLATION OF THE ADAAA

79.    Plaintiff incorporates by reference paragraphs 1 through 67 of this Complaint as if fully restated herein.

80.    Plaintiff is a qualified individual with a disability. Plaintiff's disability substantially limited one or more major life activities.

81.    Plaintiff was able to perform the essential functions of her job with Defendant.

82.    Plaintiff requested a reasonable accommodation from Defendant in the form of working from home.

83.    Plaintiff's request for reasonable accommodation constituted protected

12

conduct under the ADAAA.

84.    Defendant terminated Plaintiff in retaliation for her protected conduct of requesting a reasonable accommodation under the ADAAA.

85.    Defendant's termination of Plaintiff was an intentional and willful violation of the ADAAA in violation of Plaintiff's rights thereunder.

86.    Plaintiff is entitled to an award of back pay, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the ADAAA.

## COUNT FOUR
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

87.    Plaintiff incorporates by reference paragraphs 1 through 67 of this Complaint as if fully restated herein.

88.    Plaintiff is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

89.    Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

90.    Plaintiff is in a protected class based on her sex (female).

91.    Plaintiff was qualified for the position to which she was hired.

92.    Defendant discriminated against Plaintiff in the terms and conditions of her employment when, among other things, it treated her differently and less favorably because she was a female as compared to her male peers and terminated her employment.

13

93.    In the alternative, Plaintiff's sex was a "motivating factor" in Defendant's decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

94.    Defendant undertook this unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against Defendant.

95.    Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages.

96.    As a direct and proximate result of the Defendant's actions, Plaintiff suffered damages including stress, inconvenience, loss of income and benefits, humiliation, and other indignities.

97.    Plaintiff is entitled to an award of back pay and benefits, compensatory damages, attorney's fees, punitive damages, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

14

a.      a declaratory judgment that Defendant violated Title VII and the ADAAA;

b.      a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII and the ADAAA

c.      full back pay from the date of Plaintiff's termination to reinstatement, taking into account all raises to which Plaintiff would have been entitled but for Defendant's unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

d.      compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

e.      punitive damages to deter Defendant from engaging in unlawful conduct in the future;

f.      attorneys' fees and costs; and

g.      all other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Thomas J. Mew IV
Thomas J. Mew IV
Georgia Bar No. 503447

15

**BUCKLEY BALA WILSON MEW LLP**
201 17th St. NW, Suite 630
Atlanta, GA  30363
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
tmew@bbwmlaw.com
*Counsel for Plaintiff*

16